Statement of case.

THE MADISON AVENUE BAPTIST CHURCH, Appellant and Respondent, *v.* THE BAPTIST CHURCH IN OLIVER STREET, Appellant and Respondent.

*It seems*, that the jurisdiction of the court under the act providing for the incorporation of religious societies (§ 11, chap. 60, Laws of 1813 ; 3 Edm. Stats., 687), to make an order authorizing the sale by such a society of its real estate, depends upon the facts before it when the order was made ; it cannot be upheld by proof that facts existed which would have justified the order, but which were in no way placed before the court, or brought to its attention at the time.

An unauthorized conveyance by a religious corporation of its real estate cannot be held valid, because it has been executed and delivered, the purchaser put in possession, and the corporation paid the consideration therefor.

In such case, however, when the corporation seeks to repudiate the conveyance, and to recover possession of the property, as a condition of recovery it will be required to restore to the purchaser all that he has paid upon the faith of the title supposed to have been conveyed, and of the possession and enjoyment of the property.

A mortgagee lawfully in possession of the mortgaged premises can retain possession against the mortgagor, after default upon the mortgage, until any and all sums due have been paid.  To authorize such retention the possession need not to have been given under the mortgage, or with a view thereto.

(*Russell* v. *Ely*, 2 Black [U. S.], 575, distinguished.)

The general rule requiring a mortgagee in possession to account for the rents and profits, when the mortgagor seeks to redeem, is not in all cases controlling.  A court of equity may give redress, according to the circumstances of the case, and will not apply the rule when it will work injustice.

Plaintiff and defendant, both religious corporations, for the purpose of effecting a union, entered into an agreement in substance as follows : That plaintiff should convey all of its property, real and personal, to defendant ; the latter to assume all of the debts of the former, and to take its corporate name, its corporators and congregation, and plaintiff thereupon was to be dissolved.  Upon petition stating these facts an order was granted by the Supreme Court directing the conveyance of plaintiff's real estate to defendant.  A conveyance was accordingly made.  Defendant took possession of the real estate, using it for the purpose of religious services, assumed and paid plaintiff's debts, most of which were liens upon the property, including several mortgages thereon.  Defendant conducted regular religious services in the church edifice, upon the property so conveyed, most of plaintiff's former corporators and mem-

bers attending and participating. In an action brought to recover possession of the real estate, *held*, that the facts stated in the petition did not show a sale, and did not give the court jurisdiction to grant the order; that the order, and the conveyance under it, were void, and that plaintiff was entitled to redeem; but that as a condition of restoration of the property plaintiff should refund to defendant the sums the latter had paid in cancellation of the indebtedness of the former.

Also, *held*, that as it appeared that the costs and expenses of maintaining religious services were more than the amount received by defendant for pew rent, the latter was not chargeable therewith; that for the use of the premises defendant should bear all the expenses while it was in possession, and should also lose the interest accruing during that period on the sums paid by it upon plaintiff's debts.

The cause of action stated in the complaint was simply ejectment. The answer, among other things, set up payment of plaintiff's debts to an amount specified; also a purchase and assignment to it of a mortgage upon the property, and claimed a right to retain possession until reimbursed the sums paid; and also asked for a foreclosure of the mortgage. By supplemental answer defendant set up the purchase by, and assignment to it, subsequent to the commencement of the action of another mortgage, and asked a judgment of foreclosure thereon. It also claimed to hold, as assignee, certain bonds of plaintiff, secured by a third mortgage, and alleged payment of other debts. Plaintiff, by a supplemental complaint, claimed, in case it should be adjudged that defendant acquired any right of possession or foreclosure under the mortgages, then that an account should be taken of rents and profits, and that defendant should be charged therewith. *Held*, that by the answer and subsequent proceedings, the title being found in plaintiff, the action was substantially turned into one to redeem on the part of plaintiff, and on the part of the defendant to foreclose the mortgages, and that in adjusting the equitable rights of the parties the court was not limited to the time of the commencement of the action, but the relief should be brought down to the close of the litigation.

(Argued February 18, 1878; decided March 19, 1878.)

APPEAL by both parties from judgment of the General Term of the Superior Court of the city of New York, affirming a judgment, entered upon a decision of the court at Special Term. (The decision upon a former appeal is reported in 46 N. Y., 131.) (Reported below, 9 J. & S., 369.)

This was an action of ejectment, commenced July 30, 1863, to recover possession of certain real estate situate upon Madison avenue, in the city of New York, with a church edifice thereon.

The answer alleged in substance that the defendant entered into possession of the premises in October, 1862, under a deed from the plaintiff, executed in pursuance of an order of the Supreme Court, upon the plaintiff's petition. The petition and deed were the result of a plan of union previously adopted by the two corporations parties hereto, which provided for the extinction of the plaintiff's corporation, the surrender of all its property to the defendant, the transfer of its name and of all its members to the defendant's society. The answer set forth the plan of union, the petition, the Supreme Court order, and conveyance under it, possession under the deed with plaintiff's consent, and claimed the fee thereunder, and that its possession be confirmed. It also alleged payment by defendant of plaintiff's debts to the amount of $16,154.23, and purchase by and assignment to it of a bond and mortgage given by plaintiff for $12,500 ; also claimed the rights of mortgagee in possession, under said mortgage, and foreclosure in case its title in fee was not sustained, and also reimbursement for the moneys paid by the defendant on plaintiff's account while in possession. The petition signed by the plaintiff's trustees stated in substance that the plaintiff was the owner of the lots in question, and had erected a church edifice thereon, the whole costing $122,000. That their present indebtedness was $73,000, sixty-one of which was secured by mortgages upon the property. That from various causes stated in the petition it was unable to pay its liabilities or meet the current expenses of the church. That the plaintiff and defendant (a religious corporation under the laws of the State, located in Oliver street, and which for some time had contemplated disposing of its property, and moving up-town,) had formed a plan and made arrangements for uniting the two churches upon the following terms : That the plaintiff should convey all its property to the defendant, and that the members of the Madison Avenue Baptist Church were to become, and be members, of the Oliver Street Baptist Church, and thereupon the regular services of the united churches were to be

held in the house of worship then owned by the plaintiff. That the trustees of the defendant were to resign, and a new election of trustees had by the united church and congregation. That thereupon the defendant was to take the corporate name of the plaintiff. That the real and personal property of both was to become liable for the indebtedness of both. An agreement for disposing of the pews in the edifice of the plaintiff after the union was consummated. That the plan of union had been agreed to by both corporate bodies. That the defendant owned property over and above its indebtedness of the value of from $50,000 to $65,000 which, upon the consummation of the union, would become applicable to the payment of the debts of the plaintiff, and that by the union the creditors of the plaintiff would obtain that amount of additional security for the payment of their debts. That the two churches had obtained subscriptions for about $15,000, to be applied to the payment of the floating indebtedness of each. Then follows a statement of a number of pew owners and pew hirers concurring in the application, that the others favor it, and that the rights of pew owners and holders will be protected.

Defendant put in a supplemental answer setting forth the purchase by and assignment to it, October 17, 1863, of another bond and mortgage, executed by plaintiff, of $30,000, the whole of which was due, and averred that defendant was lawfully in possession of the premises under said mortgage. It alleged, also, that it held, as assignee, certain bonds then due, executed by plaintiff, secured by a trust mortgage on the premises, and alleged payment of other debts of plaintiff, not set forth in the answer, to the amount of $2,224.18. Judgment of foreclosure upon the $30,000 was demanded.

Plaintiff put in a supplemental complaint, claiming that if it should be adjudged that defendant acquired any right of foreclosure or of possession under the mortgages, or any right of lien for the reimbursement of sums paid out on account of plaintiff's debts, that an account should be taken of rents and profits, and defendant should be charged there-

with, and be adjudged to surrender the premises upon being paid the balance, if any.    The further facts appear sufficiently in the opinion.

*Geo. F. Comstock* and *Addison Brown*, for plaintiff. Defendant had no equitable lien.    (*Carter* v. *Rockett*, 8 Paige, 437, 438; *Wheaton* v. *Gates*, 18 N. Y., 395, 403; *Mad. Ave. Bap. Church* v. *Bap. Church*, 46 id., 140; *Weaver* v. *Whitney*, Hopk., 12; *Ottley* v. *Browne*, 1 B. & B., 360; *Ex parte Mather*, 3 Ves., 373; *Coman* v. *Sedgwick*, Hoff. Ch., 60; *Jarvis* v. *Lobdell*, id., 479; *Ewing* v. *O'Baldiston*, 2 My. & Cr., 88; *Mickles* v. *Dillaye*, 17 N. Y., 83, 93.)    There was no valid implied contract to sustain such a lien.    (1 Kyd Corp., 120–122; Co. Litt., 9 *a*; 2 Black. Com., 103, 157; 27 Barb., 54; 62 N. Y., 425.)    The mortgages upon the property do not aid defendant's possession.    (*Runyon* v. *Mesereau*, 11 J. R., 534; 21 N. Y., 347; 23 id., 531; 54 id., 608; 2 Barb. Ch., 135; 14 Wend., 236; *Trim* v. *Marsh*, 54 N. Y., 604; *Ten Eyck* v. *Craig*, 62 id., 421, 422.)    Defendant, as mortgagee in possession, should be charged with the fair cash rental value of the premises during its occupancy. (4 Kent,* 166; *Bell* v. *Mayor. etc.*, 10 Paige, 73; *Calkins* v. *Calkins*, 3 Barb., 313; 20 N. Y., 154; *Van Beuren* v. *Olmsted*, 5 Paige, 12; *Holmes* v. *Davis*, 19 N. Y., 495; *Vandervoort* v. *Gould*, 36 id., 646; *Worrall* v. *Munn*, 38 id., 144; 53 id., 136; *Ruckman* v. *Astor*, 9 Paige, 520; *Vroom* v. *Ditmas*, 4 id., 434; *Gordon* v. *Lewis*, 1 Sumn., 143; *Quinn* v. *Britain*, Hoff. Ch., 358; *Jackson* v. *Wood*, 24 Wend., 443; *Low* v. *Purdy*, 2 Lans., 426; *Jeffries* v. *Cochrane*, 48 N. Y., 671; *Murray* v. *Ballou*, 1 J. Ch., 576–579; *Layfield* v. *Layfield*, 7 Sims., 172; 1 Paige, 147; 9 id., 469; 3 Abb., 298; Story's Eq., § 1016, *b*; *Winchester* v. *Paine*, 11 Ves., 194.)

*William R. Martin* and *Samuel Hand*, for defendant.    It was not necessary that the facts conferring jurisdiction to order a sale should appear upon the record.    (*Chemung*

*Canal Bk.* v. *Judson*, 4 Seld., 260–262; *Case* v. *Shepherd*, 2 J. Cas., 28, note ; 2 Phil. Ev. C. & H. [4th ed.], 137, 156; Freeman on Judgments, 86; *Van Dusen* v. *Sweet*, 51 N. Y., 378; *Miller* v. *Brown*, 56 id., 386; *Jewell* v. *Van Steenburgh*, 58 id., 92.) In the absence of fraud or mistake a grantor cannot avoid his deed after delivery and receipt of the consideration, on the ground of its inadequacy. (*Dygert* v. *Remerschreider*, 32 N. Y., 642; *Stone* v. *Frost*, 61 id., 615; *Mo. R. R. Co.* v. *Miami Co.*, 8 Am. R. R. R., 268; *Sugden* v. *S. P.* [8th Am. ed.], *245, 373, § 12.) The sale was not *ultra vires.* (*Bissell* v. *M. S. R. R. Co.*, 22 N. Y., 258, 281; *Buffet* v. *T. & B. R. R. Co.*, 40 id., 180, note ; *Taylor* v. *C. & M. R. Co.*, 4 H. & C., 409; 2 Exch., 356; 39 L. J. Exch., 217; L. R., 4 H. L. Cas., 628; *Ashbury R. Co.* v. *Riche*, L. R., 7 id., 653; Brice on *Ultra Vires* [2d ed.], 59, 128.) The agreement for the reunion of the churches, and for attending public worship together, were subjects of ecclesiastical jurisdiction with which this court will not interfere. (Princeton Review, Jan., 1878, p. 27; *Watson* v. *Jones*, 13 Wall., 723; *Watkins* v. *Wilcox*, 66 N. Y., 655; *Connitt* v. *Ref. P. D. Ch.*, 54 id., 551.) Plaintiff should perform its contract, unless expressly prohibited by law. (*O. and A. R. Co.* v. *Penn. Tr. Co.*, 83 Penn. St., 160, 163, 164; Field on Corp. [ed. 1877], §§ 264–268; *State B. Agricul.* v. *Citizens S. R. Co.*, 47 Ind., 407; *Bradley* v. *Ballard*, 55 Ill., 413; *Day* v. *N. Y. C. R. R. Co.*, 51 N. Y., 590; *Whitney Arms Co.* v. *Barlow*, 63 id., 68–71; *Parish* v. *Wheeler*, 22 id., 494; *Taylor* v. *C. and M. R. Co.*, 2 L. R. Exch., 356; *Knowlton* v. *C. and E. Sp. Co.*, 57 N. Y., 532; *Holtz* v. *Schmidt*, 59 id., 256.) The contract as made before the petition was complete, as it stood on the reports adopted by each corporate body, and can be specifically inforced. *Malins* v. *Brown*, 4 N. Y., 407; *Miller* v. *Ball*, 64 id., 291–292; *Levy* v. *Brush*, 45 id., 589, 596; *Wheeler* v. *Reynolds*, 66 id., 227; *Patterson* v. *Copeland*, 4 W'kly Dig., 167; 1 Story's Eq. Jur., §§ 759–764; *Cammeyer* v. *U. G. Luth. Ch.*, 2 Sandf. Ch., 244–246: Brice's *Ultra Vires*, 580–586; *Argus Co.*

v. *Mayor*, etc., 55 N. Y., 501; *Hawley* v. *Keeler*, 53 id., 119; *Phillip* v. *Gallant*, 62 id., 264; *Cavalli* v. *Allen*, 57 id., 508; *Hoppaugh* v. *Struble*, 62 id., 264; *Cavalli* v. *Allen*, 57 id., 508; *Wilson* v. *W. H. R. R. Co.*, 2 DeG. J. & S., 475; *Tyler* v. *Church*, 54 N. Y., 632; *Ramsey* v. *People*, 19 id., 41; *In re Saxon L. Ins. Co.* v. *Case*, 2 J. & H., 408; *Tilton* v. *Nelson*, 27 Barb., 595, 608.) Damages for withholding possession not having been demanded in the complaint, or directed in the decision or orders, could not be recovered. (*Larned* v. *Hudson*, 57 N. Y., 151; *Cagger* v. *Lansing*,    .) Value of use and occupation could not be recovered because defendant came in and held under an agreement to purchase. (*Thompson* v. *Bowen*, 60 Barb., 478–479; Sugden V. & P., *179, § 14, and note.) Mesne profits can only be recovered in case of trespass or a tortious holding. (*Holmes* v. *Davis*, 19 N. Y., 488; 3 Phil. Ev. [4th Am. ed.], 623; Sedgw. on Dam., 132, *116; Adams on Ejectment, *391.) Each party should be restored to the position in which it would have been if the void deed had not been made. (*Gilbert* v. *Peteler*, 38 N. Y., 165; *Worrall* v. *Munn*, id., 137; 53 id., 185; *Muckles* v. *Dillaye*, 17 id., 80; *Holmes* v. *Davis*, 19 id., 493; *Benedict* v. *Gilman*, 4 Paige, 58; *Bell* v. *Mayor*, etc., 10 id., 49; *Wetmore* v. *Roberts*, 10 How., 51; *Murray* v. *Gouverneur*, 2 J. Cas., 441; Story's Eq. Jur., § 1016 *a*, and notes; Sedgw. on Dam., *126; *Morrison* v. *Robinson*, 7 Casey [Penn.], 459.) Defendant was a mortgagee in possession, and had an equitable lien to hold the property until the debts other than the mortgages are paid. (*Gilbert* v. *Peteler*, 38 N. Y., 165; *Rose* v. *Watson*, 10 H. L. Cas., 672; *Torrance* v. *Bolton*, 14 L. R. Eq. Cas., 124; 1 Wh. & Tud. L. C. [5th ed.], 362–366.]

EARL, J. Upon the prior appeal in this case to this court it was decided that the Supreme Court had no jurisdiction to grant the order authorizing the conveyance by the plaintiff of its church property to the defendant, and hence that such conveyance was invalid. It was held that the court could

authorize a conveyance only in the case of a sale, and that the facts did not show a sale. It was also held that by the common law in force in this state, religious corporations were restrained from alienating their real estate, and that when the conveyance now in question was made they could alienate their real estate only when authorized by the court, under section 11 of the act "to provide for the incorporation of religious societies," passed April 5, 1813, or when authorized by some act of the Legislature. (*Madison Ave. Baptist Church* v. *Baptist Church in Oliver street*, 46 N. Y., 131.) The case, so far as concerns the sale and conveyance, is the same now in all its essential features as it was before. The jurisdiction of the Supreme Court to make the order authorizing the conveyance depended upon the facts before it when it made the order. Its jurisdiction cannot now be upheld by showing that facts existed which were in no way placed before it, or brought to its attention or considered by it. The Supreme Court based its action entirely upon the petition presented to it by the plaintiff, and the only facts it considered were such as were alleged in that petition, and it was decided that those facts did not give the court jurisdiction to make the order. But if every fact which actually existed had been brought to the attention of the court at the time the order was made, it still would not within the prior decision of this court have had jurisdiction to grant the order for the simple reason that all the facts do not show a sale within the meaning of section 11. The whole scheme was to effect a union of the two churches. The defendant was to absorb all plaintiff's property, assume its debts and take its corporate name and all its corporators and the congregation worshipping in its church. No price was agreed upon, as the value of plaintiff's property, which defendant was to pay. The plaintiff was to be dissolved as a corporation, and was to reap no benefit from the conveyance. On the contrary, the conveyance was intended to work its destruction. The defendant was to pay plaintiff's debts, which were mostly a lien upon its property, not for

plaintiff's benefit, but for its own benefit. The plaintiff, which was at once to die, could not be benefited by the scheme.

It is argued with much zeal on the part of the defendant that, although the conveyance was *ultra vires*, yet, as it had been executed, and the whole arrangement connected therewith had been consummated, it must be permitted to stand. But this point was necessarily involved in the prior appeal to this court, and must have been decided adversely to the defendant. It would nullify the restraining law if the conveyance of a religious corporation could be held valid, because it had executed and delivered its deed, and received the consideration therefor. Corporations may incur responsibilities by acts which are *ultra vires*. But contracts, which they are prohibited from making, whether executory or executed, cannot be held valid. They may sometimes be estopped from asserting the invalidity of such contracts, and thus be practically bound by them. But that is not because the contracts are valid, but because it would be a fraud upon the other party to assert their invalidity. (*Bissell* v. *Mich. So. R. R.*, 22 N. Y., 258.)

It was, therefore, properly held in the court below, following the prior decision of this court, that the Supreme Court had no jurisdiction to grant the order authorizing the conveyance, and that the title to the property remained in the plaintiff. It remains to be considered whether the rights and obligations of the parties connected with, and dependent upon, the conveyance and transfer of possession of the property to the defendant were properly adjudicated in the court below. In 1862, at the time of the proposed union of the two churches, the plaintiff owned a church in Madison avenue, fully completed and equipped; but it was financially embarrassed, and unable to meet its current expenses. It was largely in debt, and the value of real estate at that time was greatly depressed. Its property had cost about $122,000. Its debts were at least $73,000; of which $61,500 were secured by mortgages upon its real estate. The

defendant at the same time owned a church in Oliver street, and real estate in other parts of the city worth upwards of $75,000, and it owed nearly $16,000, of which $7,000 were secured by a mortgage upon its real estate. Its members desired to secure a place of worship in a more desirable quarter of the city, and negotiations for a union with plaintiff were entered upon, and a scheme for the union was devised and agreed upon by plaintiff and defendant, of which the following were the principal features :

The plaintiff was to transfer and convey to the defendant all its real and personal property, and was then to be dissolved. It was to make out a list of its members duly certified by its clerk, and such members were to be received as members of the defendant. The trustees of the defendant were to resign, and six new trustees were to be elected, three from the former members of the plaintiff, and three from the former members of the defendant. The defendant was to have its name changed to that of the plaintiff, and the property of both corporations was to be liable for the debts of both. After such election of trustees there was to be a sale of the pews in the Madison avenue church, and regular religious services were to be conducted by the defendant in that church. This scheme was substantially carried out. The plaintiff under the order of the Supreme Court conveyed its property to the defendant, and the defendant, by an instrument in writing, agreed to assume and pay all plaintiff's debts. All the plaintiff's members were admitted to membership in defendant's church. Defendant's trustees resigned, and six trustees were elected in their places, as provided in the scheme ; and there was a sale of the pews and change of defendant's name, as also provided. The defendant sold its property and realized therefrom, over and above the incumbrance thereon, the sum of $68,400.10. It was one of the conditions upon which the union was to be consummated that both churches should raise by voluntary subscriptions sufficient money to pay off the floating debts of both. Accordingly such subscriptions were made, and the

floating debts of both churches were paid, only the sum of $3,400 being raised by the plaintiff, and the balance being raised by the defendant. The defendant took possession of the Madison avenue church, and held possession thereof until November 13, 1876, when possession was delivered to the plaintiff under the judgment in this case. It paid all of plaintiff's debts, except the sum of $3,400 raised by plaintiff as above stated, the amount of its payments being upwards of $68,000. During the whole time it maintained in its church all the services usual in Baptist churches. The church was at all times open to all, and most of plaintiff's former corporators and members attended and participated in the services there conducted.

In the summer of 1863 a majority of plaintiff's trustees having become dissatisfied with what had been done repudiated the conveyance, and the union of the churches, and commenced this action in plaintiff's name to recover back the property conveyed. The result has been that the plaintiff has recovered the possession of the property, and upon an accounting, conducted upon principles laid down by the court below, the defendant has been brought in debt to the plaintiff in the sum of $9,681.20. The plaintiff has back all of its property in good condition, free of debt, which, in 1875, was worth $225,000; and the defendant, although acting in good faith, has lost all its property, owns no place of worship and is in debt to the plaintiff in the sum of nearly $10,000. The result is somewhat extraordinary, and would seem to be quite inequitable. It was reached by holding the conveyance void, and then, upon the accounting, crediting defendant with the amount it paid upon plaintiff's debts, and charging it with all pew rents received during about fourteen years, and allowing it nothing for the expenses of maintaining religious services in the church, which exceeded the amount of the pew rents.

So far as I can perceive there was nothing illegal in the scheme, but the conveyance of plaintiff's property. Nothing else done was in violation of any law. The two ecclesiastical

bodies could unite and be merged in one. New trustees could be elected, and they could go on and manage the church and maintain services therein. It was not illegal for plaintiff to put defendant in possession of its property upon some arrangement by which it was to maintain the services, and pay up plaintiff's debts, and it could even give the defendant a lien upon its property for any sums it might advance for plaintiff's benefit. (*Manning* v. *The Moscow Presbyterian Society*, 27 Barb., 52.) The plaintiff cannot recover back the property and also retain the consideration paid therefor. It was bound to restore to the defendant all it had received on account of the conveyance. This is not disputed. All the facts are set up in the answer, and equitable relief is demanded, and the account between the parties can be taken in this action. The defendant paid plaintiff's debts upon the faith of the title supposed to be conveyed, and upon the faith of the possession and enjoyment of the property, and in precise accordance with its agreement, and the court should not deprive it of this property until the plaintiff has in some way made restoration. There can be no moment of time when the plaintiff is entitled to have both the property and the consideration it received therefor. Restoration by the plaintiff should be a condition in such a case of restoration by the defendant. This, it seems to me, is demanded by general principles of equity and justice, and sanctioned by analogous cases. (*Gibert* v. *Peteler*, 38 N. Y., 165; *Mickles* v. *Dillaye*, 17 id., 80; *Rose* v. *Watson*, 10 H. L. C., 672; *Dime* v. *Grace*, 5 DeG. & S., 451.)

But there is another ground upon which defendant could claim possession of the property until the plaintiff made restoration. At the time of the conveyance to defendant, there were three mortgages upon plaintiff's property — one to secure $30,000, one to secure $12,500, and another to secure $18,000 of bonds which plaintiff had issued. The deed to the defendant was dated October 21, 1862, and then, with the consent of the plaintiff, defendant took possession of the property. The plaintiff was then in default in the pay-

ment of the interest upon the first mortgage named, and on the twenty-eighth day of October the defendant paid the semi-annual interest which fell due thereon on the prior first day of August, and the defendant also paid the interest which fell due on the same mortgage February 1, 1863. On the 5th day of February, 1863, the defendant paid the semi-annual interest which fell due on the first day of the same month on the second mortgage above mentioned and, on the second day of May thereafter, purchased and took an assignment of said mortgage. On the 17th day of October, 1863, the defendant purchased and took an assignment of the first mortgage mentioned, and from time to time, after it took possession, it paid and took and held the bonds secured by the third mortgage above mentioned.

This suit was commenced July 30, 1863. At that time the defendant was a mortgagee in possession of the property, and it was lawfully in possession by the consent of the plaintiff. Upon the mortgage then held by the defendant, the plaintiff had not paid any interest since August 1, 1862, and by the terms of the mortgage the whole amount secured thereby was due. While under our present law a mortgagee cannot bring ejectment to obtain possession of the mortgaged premises, being lawfully in possession under a mortgage upon which some amount is due, he can retain such possession against the mortgagor until such amount has been paid. (*Van Duyne* v. *Thayre*, 14 Wend., 233; *Phyfe* v. *Riley*, 15 id., 248; *Kortright* v. *Cady*, 21 N. Y., 343; *Trimm* v. *Marsh*, 54 id., 599; *Russell* v. *Ely*, 2 Black. [U. S.], 575.) It is ordinarily sufficient that a mortgagee is *lawfully* in possession after default upon the mortgage. The court will not then deprive him of the possession until his mortgage has been paid. The possession need not be given under the mortgage, nor with a view thereto. In the case of *Russell* v. *Ely* (*supra*), the mortgagee was not lawfully in possession. He had procured possession from a tenant after the expiration of the lease, and thus had no right to enter. Here, while the defendant had failed to get the

title, yet it was placed in possession by the plaintiff.   It was not a wrong-doer.   There was no law which restrained the plaintiff from putting defendant in possession of its property, and hence, if this action were to be treated as a simple action of ejectment, the plaintiff must have failed.   But by the answer and the subsequent proceedings, the title being found in the plaintiff, the action was substantially turned into an action on the part of the plaintiff to redeem from the mortgages, and on the part of the defendant to foreclose the mortgages.

It matters not that defendant obtained the other mortgages after the commencement of the action.   They were due before the action was finally at issue, and in adjusting the equitable rights of the parties, the court could properly require payment of them also.   It is the practice of courts of equity, when they have once obtained jurisdiction of a case, to administer all the relief which the nature of the case and the facts demand, and to bring such relief down to the close of the litigation between the parties.

So much of plaintiff's debts as were not secured by the three mortgages must in this action stand upon the same footing as the mortgage debts.   They were paid at plaintiff's request upon the faith of the property.   The defendant would not have paid them but for its reliance upon the property.   They were paid while it was in possession, with plaintiff's assent.   They may be said to have been paid to save the property.   One debt was in judgment, another was an assessment lien, and all of them could have been inforced against the property.   Under such circumstances the plaintiff seeking equitable relief by way of redemption from defendant, a mortgagee in possession, should be required to do equity, by paying not only the debts secured by mortgages, but the amount paid by defendant upon other debts also.   (*Benedict* v. *Gilman*, 4 Paige, 58 ; *Bell* v. *Mayor, etc.*, 10 Paige, 49; *Morrison* v. *Robinson*, 31 Penn. St., 459; *Harper's Appeal*, 64 id., 315; *McSorley* v. *Larissa*, 100 Mass., 270; *Sanders* v. *Hooper*, 6 Beav., 246; *Rose* v. *Wat-*

*son,* 10 H. L. Cas., 672; 1 White & Tud. Lead. Cas. [5th ed.], 362–366.)

But the plaintiff claims that the pew rents received by the defendant have been more than sufficient to pay all the debts it owed when defendant took possession, and such is the judgment of the court below, and it therefore becomes necessary to inquire whether the accounting in that court was conducted upon proper principles.

The ordinary rule when a mortgagee is in possession, and the mortgagor seeks to redeem, is to make the former account for the rents and profits of the mortgaged premises. Generally the application of this rule will do justice between the parties. It should generally be applied when the premises are such as are kept for pecuniary profit, or have a rentable value, or can be made to yield a pecuniary income. The mortgagee should not make a profit by the possession, and the mortgagor should not suffer a loss by being deprived of the possession. The mortgagee should make to the mortgagor a just and equitable compensation for the possession. But the general rule cannot properly be applied in all cases. In some cases it will fail to do justice, and in others will do injustice. In a court of equity no general rule for compensation is inflexible. It may mould its relief, and give redress according to the circumstances of each case. When ordinary rules will not apply in the administration of equitable relief, or will work injustice, it must be guided by reason and justice. (*Worrall* v. *Munn,* 38 N. Y., 137; *Morrison* v. *Robinson,* 31 Penn., 456.) Now, in this case, the defendant made no profit out of the possession of plaintiff's church. It was a species of property not intended to be used for pecuniary gain, and which is generally burdensome rather than profitable. The church was erected and intended to be used exclusively for religious services, and it would be a breach of trust for the trustees of such a church to permit it to be used for any other purpose. And such a church is not intended for the exclusive use even of those who may at any particular time be its corporators or members. Religious services are

maintained therein for the benefit of all who will attend.   It is the purpose of every Christian church to make converts, and extend its membership   The Christian religion is essentially proselyting and aggressive.   Its mission is to conquer the whole world, and hence no one is turned away from the doors of a Christian church so long as there is room.   It was such property that the defendant took possession of.   During the whole time of its possession it maintained services therein just as plaintiff would have been bound to.   The services were just as much for those who, prior to the union, were members of plaintiff's church as for those who were members of defendant's church   All of plaintiff's members became members of defendant's church, and nearly all of them continued to attend the services furnished by defendant.   The services were free to all.   The defendant had agreed to maintain such services, and during the whole time expended more upon them than the entire income raised from pew rents.   Is it just and equitable, under such circumstances, that the defendant should be charged with all the pew rents, and allowed nothing for maintaining the services ?   It will not do to say that the defendant was conducting its own business in the church, and should, therefore, be allowed nothing for conducting it.   It was doing the plaintiff's business as well. It was devoting the property to the precise purpose to which the plaintiff was bound to devote it.   It maintained services for the benefit not of its own corporators only, but for the benefit of the plaintiff's corporators, and all others who chose to attend.   It is true that the plaintiff as a mere corporate entity was in no way benefited by the services.   But, in treating this question, it will not do to view the plaintiff simply as an abstraction, without soul, life or substance, and separated from all its corporators and members.   It must be viewed practically as it was, with corporators and members, and a mission and duty to perform.   All its members were admitted as members of the defendant, and three of them were chosen trustees of the defendant, and many of them doubtless acted and voted as corporators of the defend-

ant, and to some extent must have influenced its action. The defendant sold its property when real estate was depressed, and used its proceeds to pay off plaintiff's debts and save its property from sale by its creditors. Plaintiff's property has been saved until it is now worth more than it cost. In such a case what should be the rule upon which the accounting between the parties should be conducted ? I think the rule adapted to this case, founded upon reason, justice and equity, is as follows : The plaintiff should pay to the defendant the amount the latter paid upon the .debts owed by the plaintiff at the time of its conveyance, and the interest upon such sum from the time the defendant ceased to possess the property. For the use of the premises, the defendant should bear all the expenses of insurance, repairs, taxes, and for maintaining and keeping up the church and services therein, and should also lose the interest upon the money paid upon plaintiff's debts. This rule, we believe, will come nearer to doing justice between the parties than any other which has been suggested. This case may be likened to that of a vendor of land who receives the purchase-money and gives possession of the land, but afterwards fails to convey a title. In such a case, the general rule is, that he must take back his land and the purchaser take back his money. The one loses the use of the land and the other the use of his money. (*Worrall* v. *Munn*, 53 N. Y., 188; *Kirtland* v. *Pounsett*, 2 Taunt., 145; *Leggott* v. *Metropolitan R. Co.*, L. R. 5 Ch. App. Cas., 716; *Metropolitan R. Co.* v. *Defries*, L. R. 2 Q. B. Div., 189, and on Appeal, 387.)

The defendant is not to be prejudiced in this case, because it paid some of the debts and continued in possession of the property after this suit was commenced. Its trustees were under a strong obligation to defend its title to the property. Before the suit was commenced there was the admission to membership in its church, and the resignation and election of trustees. It had sold pews to persons who relied upon its right to do so, and it had sold its property and paid a

portion of plaintiff's debts. It had established services in plaintiff's church, and had doubtless incurred obligations in reference to them, and had acted in all things in good faith towards the plaintiff. The defendant was then entitled to an accounting; and all the debts of plaintiff paid after the suit was commenced were paid while the conveyance was held valid by the court below.

I am unable to ascertain from the evidence or findings precisely how much defendant paid upon the plaintiff's debts, including the mortgages. The defendant should be allowed all it paid upon the principal of such debts, and for interest due and paid by it down to the time it took possession; and then upon the principal and interest thus paid it should be allowed interest from the time possession was again delivered to the plaintiff. As the property is abundant security for the amount of debts claimed, it is not important that the possession should be restored to it. The court below may specify a time within which the amount found due the defendant must be paid, and may order a sale of the property in default of such payment, as in a case of foreclosure.

This litigation has been long and expensive. It must have embarrassed the Christian work of the Madison Avenue Baptist Church. It must have engendered discord where unity ought to prevail; and it would seem that a small share of that charity which "suffereth long and is kind" ought now to bring it to a speedy termination.

The judgment below must, therefore, be affirmed, so far as it adjudges the deed to the defendant invalid, and the title to be in the plaintiff; and in other respects it must be reversed, and the case must be remitted to the court below for an accounting upon the principles herein indicated, neither party to recover costs against the other in this court.

All concur, except ALLEN, J., not sitting, and MILLER, J., not voting.

Judgment accordingly.