(66 App. Div. 486.)

### BARSON et al. v. MULLIGAN et al.

(Supreme Court, Appellate Division, First Department. December 6, 1901.)

**1. EJECTMENT—ADVERSE POSSESSION—LANDLORD—RIGHT OF ACTION.**

> Where the owner of premises which are in the adverse possession of another leases to a tenant, such lease does not affect the right of the owner to sue for and recover possession from such adverse holder, since such recovery is necessary to enable the owner to comply with his contract and deliver possession to his tenant.

**2. SAME—TENANT OF LIFE TENANT—MORTGAGEE.**

> Defendants, while in possession under a lease from the life tenant, purchased a past-due mortgage covering the fee of the premises. On the death of the life tenant, plaintiffs, owning the reversion, without payment of the mortgage, brought ejectment to recover possession from defendants. *Held*, that defendants, having gone legally into possession, and not being tenants of the plaintiffs, have the right to retain possession as mortgagees until their mortgage is paid. Per Ingraham and Patterson, JJ.

Van Brunt, P. J., and Hatch, J., dissenting.

Appeal from trial term, New York county; John Proctor Clark, Judge.

Action by William G. Barson and another against Agnes K. Murphy-Mulligan and another. From a judgment for plaintiffs, defendants appeal. Reversed.

Argued before VAN BRUNT, P. J., and PATTERSON, INGRAHAM, HATCH, and LAUGHLIN, JJ.

Charles W. Coleman, for appellants.
Henry A. Forster, for respondents.

INGRAHAM, J.  This action was in ejectment, and the appeal presents two serious questions, the facts in relation to which are undisputed, the verdict of the jury having determined the question of the defen'dants' joint possession of the premises and the damages which the plaintiffs were entitled to recover.  The premises in question were conveyed to one Selena Barson by a warranty deed dated April 23, 1853, and duly recorded, who mortgaged the same, to secure the payment of $1,000, on October 1, 1853.  Selena Barson died on November 2, 1862, intestate, leaving, her husband and three children, her heirs at law.  One of these children (George) disappeared about 1879.  He was at that time unmarried and without children.  Since that time no news has been received from him. Upon the death of Selena Barson, her husband, Charles Barson, entered into possession of the premises as tenant by the curtesy, and continued in such possession until his death, October 2, 1897. On March 26, 1894, the defendant Agnes Mulligan, then Agnes Murphy, obtained a lease of the premises in question from Charles Barson, which purported to lease the premises for a term of five years and four months from January 1, 1895, which lease would have expired on May 1, 1900.  The right of the lessee under this lease expired upon the death of Charles Barson, October 2, 1897.  The defendant Agnes Mulligan acquired title to the mortgage on June 28, 1888.  The subsequent transfer of this mortgage to Steers, having been merely as collateral security for the payment of note held by a bank of which Steers was president; I do not deem as important. The defendant Agnes Mulligan went into possession of the premises under this lease from Charles Barson, then tenant by the curtesy, and has continued in the possession of the premises since that time. This action was commenced September 13, 1898, and was to recover possession of the premises occupied by the defendants, who are husband and wife, being a part of the premises leased by Charles Barson to the defendant Agnes Mulligan, and into the possession of which she entered under the lease to her before mentioned.  It also appeared that the plaintiffs, on October 2, 1897, executed a lease of premises, including those in the occupation of the defendants, to one John J. Cox for a term of two years and six months from October 1, 1897, at a yearly rent of $2,100.  Cox entered into the possession of all the premises leased except the portion in possession of the defendants, and has continued in such possession down to the present time.  There is indorsed upon this lease the following:  "The within lease is hereby surrendered, and it is hereby mutually agreed that the same is canceled.  Dated December 27, 1897."  But this surrender was not actually executed until April 10, 1899, at which time the plaintiffs made a new lease to Cox, leasing the premises demised by the former lease, with the exception of that actually occupied by the defendants, at a yearly rental of $1,800.  The two questions presented upon this appeal are:  First, as to the right of the plaintiffs to the possession of the premises as at the time the action was commenced, the prem-

ises sought to be recovered having been leased to Cox; and, second, whether the defendant Agnes Mulligan was entitled to maintain possession of the premises, after the expiration of the lease to her, as mortgagee in possession.

I agree with Mr. Justice HATCH as to the first question discussed by him, but I am inclined to think that the defendant Agnes Mulligan is a mortgagee in possession, and that this action of ejectment cannot be maintained as against her and those holding under her. She entered into possession of the premises under a lease from the life tenant. The validity of the life tenant's title and the rightfulness of the possession of the defendant Agnes Mulligan under that lease during the life of the life tenant are not disputed. While she held as lessee of the life tenant, she was not a tenant of the plaintiffs, in whom the remainder was vested; and it cannot be disputed but that, had she acquired during that lease a right to possession of the premises superior to the plaintiffs' right, she would have been entitled to maintain such possession as against them. The rule that a tenant cannot dispute his landlord's title applies only where the conventional relation of landlord and tenant exists, and, that relation not having existed between the plaintiffs and the defendant Agnes Mulligan, the rule did not apply. In this action she was clearly entitled to set up any title or right to possession adverse to the plaintiffs that had vested in her, and, if such a title or right to possession is superior to that of the plaintiffs, she could defeat the plaintiffs' recovery. After the defendant entered into possession as lessee of the life tenant, she acquired the title to this mortgage upon the premises executed by the plaintiffs' ancestor, and to which the plaintiffs' title was subject. After the term of the lease by the life tenant had expired, was she entitled to maintain possession of the premises as mortgagee in possession? I think she was. The relation existing as between mortgagor and mortgagee of real property, as modified by the modern equitable doctrine that a mortgage is a mere lien upon the land the legal title to which remains in the mortgagor, has been much discussed, but the principles, I think, are now definitely settled in this state. Trimm v. Marsh, 54 N. Y. 604, 13 Am. Rep. 625, where it is said:

"Here the mortgagor has, both in law and equity, been regarded as the owner of the fee, and the mortgage has been regarded as a mere chose in action,—a mere security of a personal nature. * * * It is true, notwithstanding the provision of the Revised Statutes which prohibits an action of ejectment by the mortgagee to obtain the possession of the mortgaged premises, that, after he has lawfully obtained the possession, he may retain it until the debt secured by the mortgage has been paid. * * * Before taking possession, the mortgagee had a mere lien upon the real estate pledged for the security of his debt. After possession he has in his possession the property pledged as his security, the title remaining as it was before."

—Quoting with approval what was said in Kortright v. Cady, 21 N. Y. 343, 78 Am. Dec. 145:

"The mortgagee's right to bring ejectment, or, being in possession, to defend himself against ejectment by the mortgagor, is but a right to recover or to retain possession of the pledge for the purpose of paying the debt. Such a right is but the incident of the debt, and has no relation to a title or estate in the land. The notion that a mortgagee's possession, whether before or

after default, enlarges his estate, or in any respect changes the simple relation of debtor and creditor between him and his mortgagor, rests upon no foundation. We may call it a just and lawful possession, like the possession of any other pledge; but, where its object is accomplished, it is neither just nor lawful for an instant longer."

The only question, therefore, that can arise as to the right of a mortgagee in possession to hold the premises until the mortgage debt is paid, depends upon the method by which she obtained possession; and it is claimed that that possession must be with the assent of the mortgagor, but I can find no authority limiting the right of a mortgagee to hold property of which he is in lawful possession to a case where such possession was with the consent of the mortgagor. As was said by Judge Earl in Madison Ave. Baptist Church v. Oliver St. Baptist Church, 73 N. Y. 94:

"While, under our present law, a mortgagee cannot bring ejectment to obtain possession of the mortgaged premises, being lawfully in possession under a mortgage upon which some amount is due, he can retain such possession against the mortgagor until such amount has been paid [citing cases]. It is ordinarily sufficient that a mortgagee is lawfully in possession after default upon the mortgage. The court will not then deprive him of his possession until his mortgage has been paid. The possession need not be given under the mortgage, nor with a view thereto."

In Hubbell v. Sibley, 50 N. Y. 470, the defendant, holding a mortgage upon real property, attempted to foreclose his mortgage by a strict foreclosure. Upon a sale upon that foreclosure the premises were bid off by the defendant, who entered immediately into possession. The possession thus acquired was certainly not with the consent of the mortgagor, and yet it was held that the purchaser was entitled to hold the premises as mortgagee in possession; that the only remedy that the mortgagor had was a bill to redeem, to which the 10-years statute of limitation applied; and that the 10-years statute in such an action was a good defense. In Van Duyne v. Thayre, 14 Wend. 233, the action was ejectment for dower in certain mortgaged premises of which the plaintiff's husband was the owner subject to a mortgage. The mortgagor remained in possession of the premises by himself or his tenants until 1829 or 1830, when he left, declaring that he would pay no more for the premises, and complaining that Stewart had ruined him. On his leaving the premises, the guardians of the minor heirs of Stewart entered, and the premises were thereafter occupied by the heirs. There was here no evidence of a consent by the mortgagor, but it was held that the mortgagee, being in possession, was entitled to hold the property until his mortgage was paid, and that the widow had no right in this respect beyond what would belong to her husband if the mortgagor was living. In Phyfe v. Riley, 15 Wend. 254, 30 Am. Dec. 59, it was held that:

"By the Revised Statutes the mortgagee must complete his title by other proceedings before he brings his suit. But if the mortgagee, after forfeiture, obtains possession in some legal mode other than by an action, why should the mortgagor or those claiming under him recover the possession from the mortgagee without paying the money secured by it? * * * It cannot be denied that the mortgagee has an interest in the mortgaged premises; and that interest, after forfeiture, is a legal interest. It is, indeed, inchoate until

foreclosure; but it has heretofore been considered sufficient to protect him in the possession of the mortgaged premises when legally obtained."

Winslow v. Clark, 47 N. Y. 263, was a case where a mortgagee made an ineffectual attempt to foreclose a mortgage. The foreclosure, however, was of no effect, as the owner of the equity of redemption was not made a party, but. the mortgagee was held entitled to retain possession. In Townshend v. Thomson, 139 N. Y. 152, 34 N. E. 891, the same principle was applied. There a mortgagee who had foreclosed his mortgage, but who had failed to make the owner of the equity of redemption a party, obtained a deed from the master, and went into possession of the property. It was not suggested that his possession was with the consent of the mortgagor, but it was clearly adverse to him under a deed which purported to convey his title to the mortgagee. In that case Judge Earl says:

"A mortgagee who has lawfully taken possession of the mortgaged premises cannot be ousted or deprived of his rights as such by the mere intrusion of the owner of the equity of redemption against his will or without his knowledge. There must be some act or omission on his part indicating a change in his position. The mortgagee who has taken lawful possession of the land pledged for his debt is not obliged to stand upon the land with a club to keep off intruders; nor need his continued possession be of such a character as is required by the statute to create a title by adverse possession."

What is essential to entitle a mortgagee to hold possession of the premises until his mortgage debt is paid is that his possession should have been lawfully acquired. If, under a deed which purports to convey title, a mortgagee enters into possession, although that deed is void, he is entitled to maintain possession until his mortgage debt is paid. This follows from the decisions in the cases in which a mortgagee has entered under a deed in a foreclosure proceeding, either statutory or by action of foreclosure; and it has been expressly and repeatedly held that the possession of the mortgagee need not be given under the mortgage, nor with a view thereto. Madison Ave. Baptist Church v. Oliver St. Baptist Church, supra; Winslow v. McCall, 32 Barb. 241.

I can see no escape, therefore, from the proposition that this defendant, being rightfully in possession, and being the owner of the mortgage upon the premises, was entitled to retain possession of the premises until the payment of her mortgage, and that the plaintiff could not maintain ejectment to recover possession of the premises.

It follows that the judgment appealed from should be reversed, and a new trial ordered, with costs to the appellants to abide the event.

PATTERSON, J., concurs.    LAUGHLIN, J., concurs in result.

HATCH, J. (dissenting). This is an action of ejectment based upon the ground that defendants are tenants holding over without permission of their landlord. The premises in question were conveyed to Selena Barson, the mother of the plaintiffs, by a warranty deed dated April 23, 1853, and she executed a mortgage upon the same on October 1, 1853, to secure the payment of the sum of $1,000.

Selena Barson died intestate in November, 1862, still seised and possessed of the premises, and leaving, her surviving, her husband, Charles Barson, Sr., William G. Barson, and Charles H. Barson, the plaintiffs herein, and George Barson, her only heirs at law. The son George Barson disappeared in about the year 1879. He was at that time unmarried and without children, and since that time no news of him has been received by any of his family. Upon the death of Selena Barson, her husband went into possession of the premises as tenant by the curtesy, and in March, 1894, he leased the premises in suit to the defendant Agnes K. Mulligan (then Agnes Murphy) for a term of five years and four months from January 1, 1895, which lease would, by its terms, have expired on May 1, 1900. In April, 1894, Mrs. Mulligan sublet a portion of the premises to one Murphy for the term of her lease, in which lease it was provided that the term should end upon the death of the original lessor, Charles Barson. Murphy assigned his lease to one Cox. The defendant Agnes Mulligan went into the possession of that portion of the leased premises not sublet by her, and has remained in possession ever since. On October 2, 1897, the tenant by the curtesy, Mrs. Mulligan's lessor, died, at which time the defendants and Cox were in possession of the premises, and thereafter Cox attorned to and paid rent to the plaintiffs, and notice to quit and surrender possession was served upon each of these defendants, but they did not surrender. In October, 1897, the plaintiffs leased the whole of the premises to Cox, already in possession of a portion thereof, and recognizing them as landlords, for a term of two years and six months from November 1, 1897; but, being unable to secure peaceable possession of the portion occupied by the defendants, such lease was canceled and surrendered in December, 1897, and thereafter, on April 10, 1899, they leased to him the portion of the premises of which he was already in possession. In the meantime the defendant Agnes K. Mulligan had become the owner of the mortgage executed by the mother of the plaintiffs. This mortgage had been assigned by her on July 6, 1888, to one Steers, as it appears, as collateral security for a loan from a bank of which he was an officer, and on October 6, 1897,—four days after the death of her lessor,—the mortgage was reassigned to her. The defendants contend that there is no proof that George W. Barson, the brother of the plaintiffs, and their co-tenant, if alive, died intestate and unmarried, or without lawful issue, and consequently that the plaintiffs are only entitled to an undivided two-thirds interest in the premises, and can only maintain an action for such interest; that the action cannot be maintained, for the reason that at the time it was begun the plaintiffs had put it out of their power to enter upon said premises by leasing the whole to Cox; and, finally, that the defendant Agnes K. Murphy-Mulligan was, at the time of the death of Charles Barson, Sr., her landlord, in lawful possession of the premises as mortgagee in possession, and that an action will not lie to disturb such possession.

It appears from the testimony that George W. Barson was last heard of in 1879; consequently at the time when this action was commenced, in 1898, 19 years had elapsed, which had lengthened to

21 years at the time of the trial. Such circumstances are sufficient upon which to predicate the presumption of his death unmarried and intestate. Karstens v. Karstens, 29 App. Div. 229, 45 N. Y. Supp. 966, 51 N. Y. Supp. 795; In re Sullivan, 51 Hun, 378, 4 N. Y. Supp. 59; Cambrelleng v. Purton, 125 N. Y. 610, 29 N. E. 907; Mitchell v. Thorn, 134 N. Y. 536, 32 N. E. 10, 30 Am. St. Rep. 685. The lease to Cox constituted no obstacle to the maintenance of this action. It is well settled that where the lessor is the owner of the property, having the right to possession of the same, he retains authority to institute proceedings against a person claiming the same to put the tenant in possession. Imbert v. Hallock, 23 How. Prac. 456; Whiting v. Edmunds, 94 N. Y. 309; Code Civ. Proc. § 2232. There can be no question but that the lease executed by Charles Barson, Sr., terminated upon his death by operation of law, and the plaintiffs, as reversioners, became entitled to the immediate possession of the premises as against everybody claiming under such lease; and they had the right to lease the property to any person whom they chose, and to take such steps as might be necessary to place such tenant in possession. Among the remedies which they might invoke for that purpose is this action, and such lease cannot be construed as constituting any bar to its maintenance. It is quite evident from the testimony that Mrs. Mulligan recognized the fact that the lease under which she held could not operate for a longer period than the life of her lessor, and it is also evident that at the time of his death she made no claim or pretense of holding by any other instrument than this lease. She at that time asserted no title or right of possession by virtue of the mortgage; and the fact that she was not then aware that the record title to the mortgage was not in her, and that four days after the death of her lessor she took steps to procure an assignment of that mortgage from Steers to herself, is satisfactory evidence that prior thereto she claimed no right of possession thereunder. While it is true that, having paid the note for which the mortgage was held as collateral security, she had title to the same, yet she had made no claim thereunder, and she was not aware that the assignment was necessary to perfect her right. The mortgage itself had been for a long time in her possession without knowledge of this infirmity, and such fact indicates pretty conclusively that the assertion of this claim was an afterthought made necessary by the termination of the lease. The court would have been justified in finding that she made the claim under the mortgage in order to resist the plaintiffs' right. We think the claim unavailing in this action. It is not pretended that she ever instituted any proceeding to foreclose the mortgage, or that any judgment was ever rendered under which she acquired possession; and it is not pretended that the mortgagor or the plaintiffs ever gave their consent to an occupancy under the mortgage. It was said in Bennett v. Austin, 81 N. Y. 308:

"The right of a mortgagee to the rents of land without the interposition of the equity power of the court before he has foreclosed the mortgage depends upon the fact whether the possession is a lawful one, either by consent of the proper parties or by means of legal proceedings. Van Duyne v.

Thayre, 14 Wend. 236; Madison Ave. Baptist Church v. Oliver Street Baptist Church, 73 N. Y. 94. The consent must be from the mortgagor, or the party who has authority to give such consent. Newton v. McKay, 30 Mich. 381; Russell v. Ely, 2 Black, 575, 17 L. Ed. 258. There is no authority for the doctrine that the mortgagee can go to the lessee and deprive the lessor of his right to the rent without the consent of the lessor."

Mrs. Mulligan's possession was by virtue of the lease in its inception, and it so continued during her occupancy thereunder. The life tenant could not incumber the property in any form, or for any instant beyond the duration of his life. When that terminated, her right, as against the legal owner, also terminated. The continuance of the possession after the death of her lessor was wrongful, and she could not, by the mere assertion of a claim, change that which was previously wrongful into a rightful possession; nor could she change by her own act the rights of the parties in the premises; and to constitute herself a mortgagee in possession required either that the plaintiffs consent, as the mortgagor was dead, or the recovery of a judgment for the foreclosure of her mortgage. She did no act whatever except to assert the claim, and, there being no acquiescence in the assertion of such right by the plaintiffs, she acquired no right thereunder, and her possession, as against these plaintiffs, was, and continued to be, wrongful. None of the cases relied upon by the defendant support the contention. In Madison Ave. Baptist Church v. Oliver Street Baptist Church, 73 N. Y. 82, it appeared that the defendant was lawfully in possession of the mortgaged premises by the consent of the plaintiff. While it is true that the defendant in that action had failed to get title under its deed, yet, as it had been placed in possession by the parties seeking to avoid the conveyance, it was held that such possession was by consent, and therefore valid, even though the possession was not given with the express object in view. The case, however, is a distinct authority for the proposition that, in order to constitute a mortgagee in possession with the rights appertaining to such relation, it must be either under a judgment or a proceeding seeking to enforce the mortgage, or with the consent of the mortgagor or other person having authority to give such consent. In all of the cases where the question has arisen and the right has been supported, either one or the other or all of these conditions appeared. It may not be necessary that the judgment under which the party enters is in all respects valid, but where claim is made there must have been either the judgment or proceeding or consent under which the entry was made and the holding had. None of these facts appear in this case. The only thing which does appear is that the defendants were in possession under the lease and after its termination as wrongdoers, and that Mrs. Mulligan held a mortgage which was due and unpaid. No other fact appears upon which she can base a claim of being a mortgagee in possession. Her possession was peaceful in the sense that nobody during the term of the lease or at its expiration had interfered with it; but this is not the peaceful possession which the law contemplates as sufficient authority to support the claim of a mortgagee in possession, and furnishes no basis of right for the assertion of such claim. There may be a peaceful possession of premises, and yet not be a shadow of right thereto.

The law requires that the possession shall not only be peaceful in character, but lawful in fact, before rights can spring out of the same in favor of the occupant; and, as we have seen, to give right as a mortgagee in possession requires not only that the possession be acquired peacefully, but in the manner before specified. It seems clear, therefore, that the defendants have failed in this contention. It is matter of small consequence whether the conventional relation of landlord and tenant existed between the plaintiffs and the defendant Mulligan at the time of the death of the tenant by the curtesy. Such would evidently be their relation had the property descended to them from the lessor of the defendant Mulligan, but, as they took through their mother, nothing came to them from such source, except that such event vested them with an immediate right of possession of the property. By section 193 of the real property law there is devolved upon the reversioner of the property all of the rights which the grantor or lessor had in the premises. It is clear, therefore, that by virtue of this provision the plaintiffs might have recognized the lease, and enforced the provisions thereof, had both parties chosen to act thereunder as a continuing instrument. The effect of the provision is to confer upon the reversioner the same right which the lessor had thereunder. The plaintiffs, however, were not bound to recognize the lease, as it ceased to have force and effect by operation of law; but the defendant was none the less bound at the election of the plaintiffs to surrender the premises on demand. The fact, therefore, that the descent of the property is not from the lessor does not change the rights or liabilities of these parties.

If these views are sound, it follows that the judgment should be affirmed, with costs.

VAN BRUNT, P. J., concurs.