(5 App. Div. 240.)

WARNIER et al. v. BOESSNECK et al.

(Supreme Court, Appellate Division, First Department. May 15, 1896.)

CONTRACTS—INTERPRETATION.

    In an action for an accounting, it appeared that plaintiffs and defendants W. & Co. each loaned money to defendants S. & Co. under contracts, by which, in addition to interest, S. & Co. were to pay each of them a percentage of the profits of the business. These loans constituted the "capital account" between the parties, and debts subsequently incurred for goods purchased by S. & Co. from plaintiffs and W. & Co. constituted the "merchandise account." S. & Co. became insolvent, and both plaintiffs and W. & Co., recognizing that they were liable as partners for the debts, entered into negotiations for a settlement, without the expenses of an assignment or receivership. Plaintiffs contended that the losses on the merchandise account should be shared equally between them, while W. & Co. insisted that the division of losses should include both the merchandise and the "capital account." Finally, an agreement was reached by the representatives of the parties reciting that W. & Co. had written a letter to plaintiffs, which, it was understood, contained a provision, the terms of which were not known to the individuals executing the agreement, referring to the equal division of losses on merchandise account by the parties, and declaring that such provision should be controlling. The letter in question stated, as the basis of settlement, that plaintiff "relinquish $15,000 to our credit at the time of ultimate settlement, and that for the balance of the losses we each of us share one-half." <i>Held</i>, that the "losses" which the parties agreed to share equally were only the losses on the merchandise account, and did not include the "capital account."

Appeal from special term, New York county.

Action by Jules Warnier and Paul David against Otto Boessneck, Herman Broesel, and others. From an interlocutory judgment in favor of plaintiffs, defendants appeal. Affirmed.

    This is an action for an accounting. At the time of the events which pertain to the controversy, the plaintiffs were partners, doing business at Rheims, France, having a branch office in New York. The defendants Boessneck and Broesel were partners, doing business at Glauchau, Germany, under the style of J. J. Wysong & Co., and later of Boessneck & Broesel. In 1889 the firm of Sylvester, Bell & Co. was organized in the city of New York, for the pur-

pose of buying and selling foreign and domestic dry goods. The co-partnership articles provided that the business should not commence until the firm should have in hand $250,000 loaned to the co-partnership. These loans were made by plaintiffs and J. J. Wysong & Co., the former loaning $100,000 and the latter $150,000, and contracts were entered into, whereby, in addition to interest upon these loans, Boessneck or Wysong & Co. was to be paid a sum equal to 12½ per cent. of the profits of Sylvester, Bell & Co., and the plaintiffs 10 per cent. of the profits, for the use of the money; and it was agreed that the money so loaned should be at the risk of the business, and that the other creditors should be first paid. These loans constituted the losses of the respective parties "on capital account." Sylvester, Bell & Co. also became further indebted to said two houses for merchandise, cash paid out, etc., subsequent to the loans, and this indebtedness is designated by all as "merchandise indebtedness." In the spring of 1892 it became apparent that Sylvester, Bell & Co., must fail. At that time it owed, on merchandise account to plaintiffs, about $435,000, and to Wysong & Co. about $100,000, and to other creditors about $220,000, and its assets were not sufficient to pay its debts. The French house and the German house both recognized that they were properly liable for the debts of Sylvester, Bell & Co. as partners, and in this situation a most active correspondence by mail and telegraph between the two creditor houses commenced, with a view to reaching an amicable arrangement, by which all the creditors could be paid, and the losses, as between themselves, adjusted, and preventing the expense of an assignment or a receivership of Sylvester, Bell & Co. The position of this latter firm was that, unless some such amicable arrangement was made, "they would take measures to protect" plaintiffs in such a way as to equalize the loss as between plaintiffs and Wysong & Co. on merchandise account. This correspondence, which was triangular between Rheims, Glauchau, and New York, lasted until May 6, 1892, terminating in an agreement in New York between the representatives of the French and German houses here, the tenth clause of which provided as follows: "Whereas, Mr. Otto Boessneck, a partner of the parties of the second part, wrote to the parties of the first part a letter, dated April 28, 1892, which letter, it is understood, contained a provision or provisions referring to the equal division of losses on merchandise account by the parties of the first and second parts, the terms of which provision or provisions, however, are not known to the individuals who execute this agreement. It is, however, agreed that the provision or provisions of said letter referring to the equal division of such losses shall, as far as this contract is concerned, be controlling, that such provision or provisions shall be deemed a part of this contract, and that, if necessary, this contract shall be deemed modified and amended so as to conform to, and be consistent with, the aforesaid provision or provisions." The letter of April 28th, referred to in this provision, states, as the basis of settlement, that plaintiffs "relinquish $15,000 to our credit at the time of ultimate settlement, and that for the balance of the loss we each of us share one-half." This letter was not seen by the New York representatives until after the execution of the agreement of May 6th, but it must be assumed, from the fact that the parties in New York were in constant communication, both by cable and letter, with their European houses, that, with knowledge of what was contained in the letter of April 28th, the same parties in New York, on the 2d day of June, executed a supplemental agreement, which, among other things, provided that "Mr. Otto Boessneck and Messrs. J. Warnier and P. David, having, on the formation of the said co-partnership, advanced large sums of money as a working capital, and the same having been lost," release the members of the firm of Sylvester, Bell & Co. from all claim and liability in respect thereto; and, in another provision, that, inasmuch as Boessneck "has lost a larger amount of money contributed for a working capital than" plaintiffs, "Wysong & Co. declines to give a general release, but reduces the amount of their claim against" Sylvester, Bell & Co. to $35,000. And the testimony shows that this amount was inserted because Broesel insisted that his firm had lost $50,000 more on account than plaintiffs, and the transfer of the $15,000 on plaintiffs' commission account to his house, and the reduction of Sylvester, Bell & Co.'s liability to $35,000, would together equalize the loss on capital account.

Argued before VAN BRUNT, P. J., and RUMSEY, WILLIAMS, O'BRIEN, and INGRAHAM, JJ.

Thomas J. Falls, for appellants.
Payson Merrill, for respondents.

O'BRIEN, J. The single question here, as it was upon the trial below, is as to whether the French and German firms agreed to divide the losses resulting from their dealings with Sylvester, Bell & Co. on capital and merchandise account, or on merchandise account alone. From the letters which preceded the one of April 28th and the agreement of May 6th, it is evident that, in the effort to reach an adjustment, the plaintiffs took the position that, the capital having been wiped out, the parties should share equally between them the loss on merchandise account; while the German house was insisting that the division of losses should include both accounts, capital, and merchandise. That both receded from these positions is rendered reasonably certain from the correspondence, which makes it clear that the German house was willing to eliminate the consideration of the capital account, provided certain concessions were made to them for their agreement to bear one-half the loss of the merchandise account, and it was the counter propositions that finally resulted in the agreement of May 6th, which is clear and explicit, and fixes definitely the understanding that what they agreed to was a division of the merchandise account. The language of the agreement is susceptible of no other meaning, and were it not for the letter of April 28th, which, as between the parties in New York, was supposed to contain a plain provision relating solely to merchandise account, there would be no subject for discussion. The absence in that letter of any such definite statement, and the language employed in stating the basis of settlement,—that plaintiffs "relinquish $15,000 to our credit at the time of ultimate settlement, and that for the balance of the loss we each of us share one-half,"—have given rise to all this controversy; the appellants insisting that the word "loss," as here used, has reference to both merchandise and capital account, and that the agreement entered into was the result of a mistake between the parties in assuming that the letter contained a provision eliminating the capital, and confining the loss to the merchandise account alone.

In the light of the preceding correspondence, we think that the subject to which the word "loss" referred is reasonably certain. A brief reference thereto will show, as said, that while, from the very outset, the plaintiffs insisted upon an equal division of losses on merchandise account, the German house endeavored to bring in the capital account; that this latter suggestion was rejected by plaintiffs; and that thereafter the parties were negotiating on the basis of a letter dated March 28th, written by plaintiffs, which contained a proposition for an equal division of losses on merchandise account. And, further, we do not agree with the appellants' contention that the agreement of May 6th was unjust and unreasonable. The capital of both parties had been invested, with full knowledge that it

was subject to the hazards of the business. The German house hazarded the larger amount, and were to be compensated by receiving a larger share of the profits. The merchandise indebtedness, on the other hand, was incurred in the expectation that it would be repaid, thus making it simply a debt. Assent to such agreement prevented the possiblity of Sylvester, Bell & Co.'s making an assignment, and thereby, or in some other way, preferring the plaintiffs, which they had a right, and were seemingly disposed, to do; and it also secured to the German house the payment of two notes, aggregating over $11,000, and a loan of 120,000 francs, besides an allowance of $15,000 out of moneys, which, in the way of commissions, the plaintiffs had earned, and which, as a consideration for the agreement, they were to pay to the German house. Whether the agreement gives one or the other a greater advantage is not a controlling consideration, our duty being to determine what was the contract between the parties.

In addition to the aid which we receive from the prior correspondence, we have, in the subsequent agreement of June 2d, a practical interpretation of the contract by the parties after its execution; and it being therein recognized that the capital was lost, and that their agreement was to share loss on merchandise account, they undertook to equalize it, not only by the provision for the payment of $15,000 by plaintiffs in cash, but by reserving, in their release to Sylvester, Bell & Co., $35,000, which, taken together, equal in amount the difference between the loss of the German house and that of the French house on capital account. With the support thus obtained from the correspondence and the acts of the parties, we must conclude, as did the learned judge, that there was no such mutual mistake as would require a court of equity to disregard the plain language of the agreement of May 6th, which placed upon the parties thereto the obligation of dividing between them the loss on merchandise account.

Assuming, then, that the obligation on the part of the appellants was to share the merchandise losses, they insist that this action was prematurely brought, because the letter of April 28, 1892, contemplated a sharing of losses at the time of the ultimate settlement or liquidation of Sylvester, Bell & Co.'s affairs, and that, as that time had not arrived when this action was brought, it was premature. The testimony, however, shows that the liquidation had been substantially completed when the action was brought, and at the time of the trial was entirely completed; and this, under the rule that prevails in equity, as distinguished from the rule applicable at law, destroys the force of their contention, it being sufficient in equity if a ground of relief exists at the time of the trial.

Equally untenable is the claim that the plaintiffs cannot recover because on January 1, 1893, they did not pay the $15,000 to appellants. There is no valid reason why they should pay that amount in cash on that date, when it is apparent that, after giving appellants credit for that amount, there would still be a large balance due the plaintiffs, which was credited to them, and this was equivalent to payment. Moreover, this provision was an independent stipulation, and not an absolute condition, and, even though the appellants might

have sued and recovered the amount, it was not a bar to maintaining this suit for an accounting.

The other questions presented and the exceptions taken we have examined, but find no reason for interfering with the judgment, which should be affirmed, with costs. All concur.