knowledgment by the debtor of more being due, from which a promise may be inferred to pay the remainder." We think that it should be held as matter of law that the plaintiff did not show herself entitled to recover for services rendered for the decedent beyond the time limited by the statute of limitations, and, therefore, that the judgment should be reversed, and a new trial ordered, with costs to the appellant to abide event.

(109 App. Div. 638)

CITY OF ROCHESTER v. ROCHESTER RY. CO. et al.

(Supreme Court, Appellate Division, Fourth Department. November 29, 1905.)

1. TAXATION—ACTION TO FORECLOSE RIGHT OF REDEMPTION—STATUTES.
   Rochester City Charter, Laws 1880, p. 48, c. 14, § 104, which provides that when any lands in the city are sold for taxes and bid in by the city, and notice to redeem shall have been served, and the lands have not been redeemed, the mayor shall execute a certificate of the fact of sale, and which declares that at any time after the execution of the certificate the equity of redemption may be foreclosed by an action by the city, in which the same proceedings shall be had as on the foreclosure of real estate mortgages, authorizes the city to maintain' an action to foreclose an owner's right in land bid in by the city for nonpayment of taxes on the owner's failure to redeem and the execution of the certificate provided for in the statute, and for a deficiency judgment against the owner personally.

2. SAME —PROPERTY SUBJECT TO TAXATION.
   A city, bidding in land for nonpayment of taxes and receiving a certificate therefor on the owner's failure to redeem, does not acquire complete title to the land under section 104 of its charter (Laws 1880, p. 48, c. 14), providing that on the recording of the certificate the title to the land shall vest in the city and the equity of redemption therein shall be barred as therein specified, and hence the land may be assessed against the owner until the city forecloses his right thereto.

3. MUNICIPAL CORPORATIONS—SPECIAL ASSESSMENTS—ENFORCEMENT.
   Rochester City Charter, Laws 1880, p. 73, c. 14, § 206, makes an assessment for local improvements a personal obligation against the owner and provides for the maintenance by the city of an action for the collection thereof "in addition to other remedies." Section 209 provides that in case the assessment remains unpaid the same shall be added to the general city taxes and collected as provided for the collection of general city taxes. Held, that the city's right of action for local assessments was not lost because they were·added to the general city taxes.

4. TAXATION—COLLECTION OF TAXES—STATUTES—CONSTRUCTION.
   Laws 1903, p. 1187, c. 522, providing that all taxes spread on the assessment rolls of a city may be collected either by action, or by supplementary proceedings, or by foreclosure of tax liens, gives the city the right to collect by action taxes previously levied.

5. SAME—JURISDICTION OF COURT—ENTRY OF JUDGMENT.
   Where the complaint in a suit by a city for taxes filed before the adoption of Laws 1903, p. 1187, c. 522, authorizing it to collect taxes either by action, or by supplementary proceedings, or by foreclosure of tax liens, included all the facts and sought the relief involved in granting of a deficiency judgment against the owner personally, the city was entitled to the judgment authorized by the act. Equity, having acquired jurisdiction, ought to finally settle the controversy and adapt its judgment to· the law existing at the time of its rendition.

6. MUNICIPAL CORPORATIONS—COLLECTION OF ASSESSMENTS—JUDGMENT.
    A judgment in an action for a local assessment payable in installments properly included the installments not due, where it provided that no execution should issue for the future installments until due.
    McLennan, P. J., and Nash, J., dissenting.

Appeal from Special Term, Monroe County.

Action by the city of Rochester against the Rochester Railway Company and others. From so much of a judgment for unpaid taxes as renders defendant railway company personally liable for the deficiency in payment of taxes after the application of the proceeds of land directed to be sold, it appeals. Modified.

Argued before McLENNAN, P. J., and SPRING, WILLIAMS, HISCOCK, and NASH, JJ.

P. M. French, for appellant.
B. B. Cunningham, for respondent.

HISCOCK, J.    This action was brought upon certain unpaid taxes assessed by the plaintiff both for general and local purposes, to foreclose and cut off defendant's right and title in a small strip of land, and also to recover a judgment against the latter for any deficiency remaining after application of the proceeds of the sale of said property to the payment of said taxes. The judgments appealed from awarded the relief sought; the later one adjudging the recovery of $833.66 from the defendant, of which amount $731.47 was deficiency and the balance costs and expenses of sale. The defendant does not complain of said judgments in so far as they decree a foreclosure and sale of the premises in question, but of those portions which in effect adjudge it personally responsible for the deficiency in payment of the taxes in question after the application of the proceeds of the land sold. Various reasons are assigned why such provisions are erroneous and should be reversed; but we think that none of them are well founded, and that, subject to slight modification, the judgments appealed from should be affirmed.

As stated, the taxes for nonpayment of which plaintiff has sought and secured relief in this action were assessed both for general purposes and local improvements, and in order to appreciate the nature and effect of the acts which were done in connection therewith, and to properly understand and solve the questions presented by defendant's contentions herein, it will be necessary to refer somewhat at length to the charter provisions governing the assessment and collection of taxes, both general and local, in the city of Rochester. Section 206, c. 14, p. 73, Laws 1880, makes an assessment for local improvements a personal obligation against the owner of land, and provides for the maintenance by the city of an action for the collection thereof, "in addition to other remedies." Section 209 provides that, in case such an assessment remains due and unpaid after certain steps have been taken for the collection thereof, the assessors, in preparing the next roll for general city taxes, shall insert therein against the property assessed the amount of such unpaid assessment, with interest, and that—

"Upon the confirmation of such assessment roll such amount shall be added to the general city taxes and the entire amount shall be collected as hereinbefore provided with reference to general city taxes and if such amount is not paid the land shall be sold therefor as hereinbefore provided."

In the case of general city taxes certain sections provide that after a specified default in payment the lands assessed shall be exposed for sale and sold "for the shortest time any bidder would take such premises and pay the said tax or assessment with said charges and expenses," and that if no bid be made for the amount of the taxes and expenses the land shall be struck off to the city. The owner of the same may redeem at any time within 2 years after the sale, and after 2 years provision is made for the service of a notice requiring redemption within 30 days. Section 104 (page 48), which becomes especially important in this action, provides that whenever any lands in said city shall have been sold for taxes or assessments and bid in by the city, and the notice to redeem shall have been served for more than 30 days, and such lands have not been redeemed, the mayor shall execute a certificate of the fact of such sale, which certificate shall be recorded in the clerk's office and is made "prima facie evidence of the regularity of the assessment and of the proceedings prior to the sale," etc. Such section then further provides as follows:

"Upon the recording of such certificate the said city or its assigns shall acquire an absolute title to such lands in fee, with the right to immediate possession and may enjoy and hold such lands free and clear from all claim or demand of any owner thereof, or any person having any lien thereon or interest therein, but the equity of redemption in such lands struck off to the city shall only be barred as hereinafter provided. At any time after such certificate is executed and recorded, and the tax or assessment mentioned therein has been at any time thereafter paid, the treasurer of said city may execute, acknowledge and deliver to the owner of such lands so sold, a certificate to the effect that such tax or assessment has been paid and upon the recording of the same in the Monroe county clerk's office, the said clerk shall discharge the former certificate of record in his office by a proper entry. * * * At any time after such certificate is executed, the equity of redemption of all persons having any interest or lien in said lands may be foreclosed by an action to be brought by said city in the Supreme Court, * * * in which action the same proceedings shall be had, as nearly as may be, as on the foreclosure of real estate mortgages, and judgment of strict foreclosure or of foreclosure and sale may be had therein as the court may direct. * * * Where an action commenced under this section has been settled and the tax lien paid * * * an order may be made and entered * * * directing the said county clerk to make a suitable and proper entry, * * * and upon such record being so made the premises therein mentioned shall be discharged of such tax lien."

The premises described in the complaint were sold to the respondent in 1894, 1897 (twice), 1898, 1899, 1900, 1901, and 1902. Following the sale in 1897 for the general taxes of that year, and in the month of July, 1901, after the expiration of two years and after service of notice to redeem, the mayor executed the certificate provided in section 104 of the charter, which was duly acknowledged and recorded. Based upon these provisions and facts the appellant contends that, by the sale aforesaid and the execution and recording of the mayor's certificate upon failure to redeem, the defendant became absolutely divested of its title to the premises and the same

vested absolutely in fee in the city, and that from that time it was improper to assess the remaining taxes against the defendant, and that the only further step or remedy remaining for plaintiff was a strict foreclosure. This court is not impressed with the last proposition. The language of the statute, interpreted in its ordinary meaning, 'is broad enough to authorize the action of foreclosure which was instituted. The more interesting claim is that of a complete title vested in the city which prevented future assessments against defendant. Although this affects only a very small portion of the amount involved, it fairly calls for a construction of the statute.

Section 104, which is relied upon to carry the burden of this theory, does not fulfill the purpose. While the first part of it does in terms provide that, upon the recording of the certificate after failure to redeem, the city and its assigns shall acquire an "absolute" title to and "hold such lands free and clear from all claim or demand of any owner thereof," etc., such provisions are by what follows most clearly and effectively modified and stripped of the broad meaning urged by defendant. These following clauses unmistakably provide that, notwithstanding what has been said about an absolute title based upon the certificate, the owner shall have an equity of redemption, which can only be barred in the manner provided, viz., by foreclosure proceedings, and that, upon payment of the taxes after the certificate to the city has been executed, another certificate of payment shall be executed, which, upon recording, shall compel a discharge of the first one and thus cancel all evidence of proceedings by the city against, or interest in, the property. It is said in behalf of defendant that these last provisions leave payment by the owner and execution of a certificate of payment after the original failure to redeem optional with the city, and contemplate only a case where by consent such payment has been made and the premises redeemed after a strict right thereto had lapsed. We do not, however, accept that interpretation. We think that it was not the intention of the statute to invest a city official with the discretion to permit or reject such payment and redemption; but that the language is to be construed most strongly against forfeiture of title and in favor of a fixed right upon the part of the property owner to redeem. If it be said that under this construction the owner has an indefinite time within which to finally redeem, it may be answered that this can be cut off by foreclosure, and, if the Legislature desired to make any simpler self-acting limitation, it was easy to do it. When we thus examine and construe the entire section, it seems clear beyond any reasonable doubt that the city did not acquire an absolute and complete title to defendant's premises which prevented the assessment of taxes; that it had no deed, which is the usual evidence of title; and that its certificate of interest was subject to a distinct right of redemption in the owner, which could only be cut off by foreclosure proceedings. While the city has proceeded further in enforcing collection of defendant's taxes than had been done in Matter of Elsner, 36 App. Div. 207, 83 N. Y. Supp. 670, the reasoning of that case nevertheless tends to overrule defendant's claim that it had been absolutely divested of its title.

But stress.is laid upon the fact that under the certificate to it the city had the right of possession pending redemption or foreclosure, and that this, as furnishing proof of an absolute title or merely as an equitable consideration, was a bar to the assessment of taxes against the owner being out of possession. If the conclusion is correct that the city did not acquire absolute legal title by the certificate, the right to a qualified, and possibly temporary, possession under it should not change such conclusion. Possession by a mortgagee does not destroy the legal title and right of redemption otherwise resting in the mortgagor. Possession by plaintiff of the lands involved in this case seems to be assumed, rather than proved. If it existed, it was technical and of no value. We are not called upon to decide any equitable questions incident to possession by a creditor, as whether the city could be made to account in any way for profits arising from its temporary possession of lands for which it continued to assess the owner. The naked question is whether possession bars assessment against the owner while his equity of redemption continues. No controlling authority has been cited to the effect that it does. The familiar rule is to the contrary, that assessment may be made against the owner until he has been completely divested of his title, and no particular hardship appears in the application here of that rule. It is said that the city may take possession of premises, and then, while enjoying the profits thereof, compel the owner to sustain the burdens of taxation. If we are right as to the latter's privilege of redemption, he may relieve himself from this situation whenever he desires by payment of his taxes. Upon the other hand, if the city is deprived of the power of taxation by reason of mere possession, the owner of undesirable or unproductive property so possessed may lie by as long as possible, or until the property has improved, and then redeem it, free from taxation for the intervening period.

It also may be said that the city, having a certificate of undesirable lands, in defiance of the wishes of the owner, might elect not to cut off the equity of redemption, in order to continue indefinitely its assessments, which, under the statute before referred to, would become a personal liability. This, however, is not a deciding argument. If the city desired to accomplish this purpose, it could do so beyond question by refraining from acquiring a certificate in the first instance. Under the statutes relating to the city of Rochester, and independent of any tax sales, any owner of undesirable lands, so long as he holds title, is subject to personal liability for assessments from year to year. The case of Wells v. Johnston, 171 N. Y. 324, 63 N. E. 1095, not only does not appear to sustain the claim made in behalf of defendant, but rather the opposite. There was no feature of a qualified right to possession in that case, as this; but the broad general rule is laid down that, intermediate the sale for taxes and the execution of the deed, whereby title in the state is made complete and perfect, assessment should be made against the original owner. See, also, Armstrong v. County of Nassau, 101 App. Div. 116, 91 N. Y. Supp. 867.

The important claim of defendant next to be considered is that

there was no personal liability upon the part of defendant for the payment of taxes, and that the judgment for deficiency, therefore, was erroneous. While it is conceded that originally it was personally liable for the payment of local assessments, it is urged that after these latter had been carried into the assessments for general taxes, as was done, plaintiff was thenceforth limited to the remedies provided for the collection of general taxes, and the right of action originally prescribed for local assessments was lost. If we are right in the view, subsequently to be expressed, that plaintiff could recover a judgment of deficiency even for general taxes, then this question is immaterial. But, independent of that, we think that the right of action for local assessments was not lost when the latter were carried into general taxes, and that this question likewise was settled by Matter of Elsner, supra. We pass, then, to the consideration of the question whether defendant was personally liable for the general taxes involved in this action, because concededly such liability must exist as a basis for most of the money judgment which has been awarded against it.

Plaintiff urges that, independent of any express statutory provision to that effect, the tax is a personal liability which may be enforced by action and judgment as any other contractual obligation. I do not agree with this proposition. Incidentally that view was urged upon our consideration in the case of City of Rochester v. Bloss, 100 App. Div. 125, 91 N. Y. Supp. 642, and, while the point was not expressly decided, whatever was there said was said against it, and it does not seem necessary in this case to review the authorities and reasons cited and advanced by plaintiff's counsel; for there is another reason which, in our judgment, permits plaintiff to have the judgment in this case. After the action was commenced, but before it was tried, chapter 522, p. 1187, of the Laws of 1903, took effect, providing that:

"All taxes heretofore spread upon the assessment rolls of the various wards in the city of Rochester may be collected by the corporation counsel either by action or by supplementary proceedings or by foreclosure of tax liens."

It has been held that this statute gives the city of Rochester the right to collect by action taxes previously levied. City of Rochester v. Bloss, supra. The only dispute which the facts in this case precipitate is whether plaintiff may obtain the benefit of said act in an action which was commenced before the act took effect. We think it may. Plaintiff's complaint, although framed before the act was passed, included all of the facts and sought all of the relief involved in and granted by the judgment which was finally rendered. It came into a court of equity seeking relief by foreclosure of its liens, as we have held it might properly do. The court acquired jurisdiction of the matters and controversies involved between it and the defendant. Plaintiff certainly had a right to so much of the judgment as adjudged foreclosure and sale. But at the time when the action was tried and the judgment rendered it had acquired, as we hold, an undoubted right to maintain an action against defendant for the recovery of the taxes involved in that very action and upon

which it was seeking foreclosure.  The only question under the circumstances is whether it should be compelled to institute another action against the defendant, simply for the purpose of commencing it after the statute was passed, or whether a court of equity, having acquired jurisdiction, should take cognizance of the rights of the parties and render a judgment in the action already pending which should finally and completely settle and protect them.  We think it is well settled that the court will pursue the latter course, and that it will render a judgment adapted to the law and the facts as they existed at the time of judgment, rather than as they happened to be at the time of the commencement of the action.  Madison Avenue Baptist Church v. Oliver Street Baptist Church, 73 N. Y. 82, 95; Kilbourne v. Supervisors, etc., 137 N. Y. 170, 178, 33 N. E. 159; Van Allen v. N. Y. C. & H. R. R. Co., 144 N. Y. 174, 38 N. E. 997; Town of Duanesburgh v. Jenkins, 57 N. Y. 177; Warnier et al. v. Boessneck et al., 5 App. Div. 240, 39 N. Y. Supp. 141.

Some minor criticisms are directed at the judgment, which may be briefly considered.  It is claimed that the premises in question were dedicated for highway purposes before the levying of any of the taxes and assessments, and that such taxes and assessments are therefore void.  We do not find any sufficient evidence that the city appropriated for street purposes the property assessed, and no such issue as that was raised either by defendant's answer or upon the trial.  The assessment for paving Thrush street was payable in installments, and, as only three of those had become due before the commencement of the action, it is claimed that the judgment should not have included the entire amount.  While the judgment did include the amount of installments not yet due, it is expressly provided that no execution should issue for such future installments until due.  By analogy with judgments in foreclosure actions covering installments still to become due, this form of judgment seems to have been proper.  Brewer v. Longnecker (Sup.) 15 N. Y. Supp. 937.  The West Side sewer tax complained of is not included in the deficiency judgment.  It is admitted, however, that the tax for the year 1893, amounting to $6.45 was improperly assessed, and should not be included, and that the judgment should be reduced by this amount, with interest to the date of entry of the judgment, aggregating $6.57.  The judgment, as above modified, should be affirmed, with costs.

Judgment for deficiency, entered April 2, 1904, reduced by the amount of $6.57, and, as so modified, said judgment and the judgment of foreclosure entered December 31, 1903, are affirmed, with costs.  All concur, except McLENNAN, P. J., and NASH, J., who dissent in an opinion.

NASH, J. (dissenting).  I dissent upon the ground that, after the tax sale by the city treasurer and the issuing and recording of the mayor's certificate, the title and right of possession of the land became vested in the city, and taxes thereon were not thereafter legally assessable to the defendant.  The assessment of land to a person who is neither owner nor occupant is void.  Whitney v.

Thomas, 20 N. Y. 281. The charter of the city provides (section 104, c. 14, p. 48, Laws 1880) that whenever any lands have been sold for taxes and bid off by the city and notice to redeem has been served, and such lands have not been redeemed, the mayor of the city shall execute a certificate of the fact of such sale having been made and the lands struck off to the city, and that the same has not been redeemed, which certificate shall be acknowledged as deeds to be entitled to be recorded in Monroe county clerk's office. The section further provides:

"Such certificates, or the record thereof, or a copy of such record duly authenticated, shall, in all courts and places, be prima facie evidence that the tax or assessment was legally imposed, of the regularity and legality of all proceedings prior to such sale and of such sale, and that notice has been duly given to redeem, and that such lands have not been redeemed. Upon the recording of such certificates, the said city or its assigns, shall acquire an absolute title to such lands, in fee, with the right to immediate possession, and may enjoy and hold such lands free and clear from all claim and demand of any owner thereof, or any person having any lien thereon, or interest therein, but the equity of redemption in such lands struck off to the city shall only be barred as hereinafter provided. At any time after such certificate is executed. the equity of redemption of all persons having any lien on or interest in said lands may be foreclosed by an action to be brought by said city in any court having equity jurisdiction, in which action the same proceedings shall be had as nearly as may be, as on the foreclosure of mortgages and judgment of strict foreclosure, or of foreclosure and sale, may be had therein, as the court may direct."

A further provision was inserted in the section by the amendment of 1890 (chapter 561, p. 1022, Laws 1890), as follows:

"At any time after such certificate is executed and recorded, and the tax or assessment mentioned therein has been at any time thereafter paid, the treasurer of said city may execute, acknowledge and deliver to the owner of such lands, so sold, a certificate to the effect that such tax or assessment has been paid, and upon the recording of the same in the Monroe county clerk's office the said clerk shall discharge the former certificate of record in the office by a proper entry upon the pages containing such record, the same as in cases of discharge of real estate mortgages by him."

In Wells v. Johnston, 171 N. Y. 32, 63 N. E. 1095, the question arose as to whether the treasurer of Oneida county was authorized to sell lands for unpaid taxes, although such taxes were assessed and levied thereon before the lands had been conveyed to the state by the Comptroller in pursuance of a sale thereof made under the tax law of 1855. By that act it was made the duty of the Comptroller to advertise and sell lands for returned unpaid taxes, and, if not redeemed within two years, execute to the purchaser a conveyance which would vest in the grantee an absolute estate in fee simple, subject to all the claims the people of the state might have thereon for taxes or other liens or incumbrances. Where upon such sale no person offered to bid, it was the duty of the Comptroller to bid in the lands for the state, and make a certificate specifying the time when the people of the state would be entitled to a deed. Such purchase was subject to the same right of redemption as purchases by individuals, and, if the lands sold were not redeemed, the Comptroller executed a release to the people of the state, which had the

same effect, and became absolute in the same time and in the performance of the like conditions, as in the case of sales and conveyances to individuals. It was held that the sale by the county treasurer for the nonpayment of taxes was void. The ground of the decision was that, when the state took title to the lands, the outstanding lien for taxes previously assessed merged in the deed, and it became the duty of the Comptroller to refund to the county of Oneida the money which it had paid to the state, if any, by reason of such assessment, and to pay over to the county its proportion of the tax levied upon the lands; but the county thereafter, or its treasurer, had no power to sell the lands to reimburse itself. In the opinion of the court it is said:

"It is contended on behalf of the plaintiff that these lands were assessed from year to year, after the sale of 1877, down to and including the year 1880, and that by the special act for Oneida county of that year, to which we have referred, the county treasurer was authorized to sell the lands for the nonpayment of such taxes. We think that the lands were properly assessed for these years, for the title of the state did not become perfect until the deed was executed. The owner still had the right to redeem during the period fixed by the statute, and during such period the premises were properly assessed, so that the owner, upon redemption, could not escape taxation for the intervening years; but, after the title of the state had become fully vested through the deed of the Comptroller, the lands were no longer assessable, and no sale could be made thereof, except in accordance with the express provisions of the statute."

In that case the owner remained in possession, had the use and enjoyment of his lands, until the deed to the state was executed. Here upon the recording of the mayor's certificate the city and its assigns acquired the absolute title in fee, with the right of immediate possession and to enjoy and hold the lands free and clear of all claim or demand of the owner. If taxes may thereafter be assessed, the result is that the city, or its assigns, by virtue of its title and right of possession, takes the rents and profits, which go into the city treasury, and continues to assess taxes upon the property; and this may go on indefinitely. It is optional with the city to exercise its right of foreclosure. There is nothing which the former owner could do to relieve himself from this anomalous situation of being neither owner nor occupant, and yet liable to assessment, assuming that he is unable to redeem. As is frequently the case, the assessment may be greater than the value of the land assessed, of which this case is an illustration. The lands here assessed for taxes and local improvements are insignificant in value. They consist of a small strip of land, 10 feet wide and 118 feet long, and a triangular parcel of less dimensions, the assessed value of which is $50. The city has refrained from exercising its right of foreclosure, continuing in the meantime to assess the property until the taxes and assessments have accumulated to an amount for which a judgment for deficiency has been taken against the defendant for $833.66. It does not seem that a fair construction of the statute will permit the city to take the rents and profits of the land, and also at the same time assess the taxes thereon to the person who was the owner. A more reasonable rule to adopt would be

to require the city to proceed to an immediate foreclosure of the remaining equity in the property, and thereby vest title in a purchaser who would become liable to taxation.

The judgment for deficiency is erroneous, and should be reversed.

McLENNAN, P. J., concurs.